UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

--------------------------------------------------x

JS IP, LLC;

FONTAINEBLEAU FLORIDA
HOTEL, LLC;

FONTAINEBLEAU FLORIDA
TOWER 2, LLC; and

FONTAINEBLEAU FLORIDA
TOWER 3, LLC;

                     Plaintiffs,

     v.

HOTELTRON CORPORATION, a
Florida Company, doing business as
LUXURYREZ VACATION RENTALS
CORPORATION, and MICHAEL
MIMOUN, an individual,

                     Defendants.

--------------------------------------------------x

## COMPLAINT

     Plaintiffs JS IP, LLC, Fontainebleau Florida Hotel, LLC, ("FFH"),

Fontainebleau Florida Tower 2, LLC, and Fontainebleau Florida Tower 3,

LLC, (collectively, "Plaintiffs") by and through their undersigned counsel, for

their complaint against Defendant Hoteltron Corporation, doing business as

Luxuryrez Vacation Rentals Corporation ("Hoteltron") and Defendant Michael Mimoun ("Mimoum", together with Hoteltron "Defendants"), hereby allege and state the following:

<u>INTRODUCTION</u>

1.    This action arises out of Defendants' infringement of Plaintiffs' trademark and bad faith use of the FONTAINEBLEAU mark in order to deceive and defraud the public and to harm Plaintiffs; as well as Defendants' knowing, intentional, and unjustified tortious interference with Plaintiffs' contractual relationships with individual condominium units owners who contracted with Plaintiff FFH to be the exclusive agent for the management, rental, and administration of their units.   As a result of Defendants' continued wrongful, unlawful, and intentional conduct, Plaintiffs have suffered, and will continue to suffer, damage to their business, reputation, and goodwill.

<u>PARTIES</u>

2.    Plaintiff JS IP ("JS IP") is a limited liability company organized under the laws of the State of Delaware, and has its principal place of business at 19950 West Country Club Drive, 10th Floor, Aventura, Florida 33810.

3.    Plaintiff Fontainebleau Florida Hotel, LLC ("FFH") is a limited liability company organized under the laws of the State of Delaware, and has

its principal place of business at 19950 West Country Club Drive, 10th Floor, Aventura, Florida 33810.

4.    Plaintiff Fontainebleau Florida Tower 2, LLC ("FFT 2") is a limited liability company organized under the laws of the State of Delaware, and has its principal place of business at 19950 West Country Club Drive, 10th Floor, Aventura, Florida 33810.

5.    Plaintiff Fontainebleau Florida Tower 3, LLC ("FFT 3") is a limited liability company organized under the laws of the State of Delaware, and has its principal place of business at 19950 West Country Club Drive, 10th Floor, Aventura, Florida 33810.

6.    The joinder of Plaintiffs JS IP, FFH, FFT 2, and FFT 3 is appropriate pursuant to Fed. R. Civ. P. 20 because Plaintiffs are jointly asserting a right to relief arising out of the same series of transactions or occurrences, and because there are common questions of law or fact that will arise in this action.

7.    Upon information and belief, Defendant Hoteltron Corporation, doing business as Luxuryrez Vacation Rentals Corporation is a Florida Corporation with its principal place of business at 1467 Mariner Way, Hallendale Beach, Florida 33019.

8.    Upon information and belief, Defendant Michael Mimoun is a resident and citizen of Miami, Miami-Dade County, Florida.

<u>JURISDICTION AND VENUE</u>

9.      This is a civil action seeking damages and injunctive relief for tortious interference with business relationships under Florida common law.

10.     This Complaint also states a claim for damages and injunctive relief for trademark infringement, unfair competition, trademark dilution, and cybersquatting under the Lanham Act, 15 U.S.C. §§  1125(c), 1125(d), trademark dilution under the Lanham Act 15 U.S.C. § 1114, and for dilution under Florida Statute § 495.151, and common law trademark infringement under Florida common law.

11.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); and 15 U.S.C. § 1121 (the Lanham Act).

12.     This Court has personal jurisdiction over Defendants because the acts of infringement complained of are "tortious act[s]" committed "within this state" under Florida Statute § 48.193(1)(b).  The websites and service are freely accessible to Florida residents and Defendants infringes Plaintiffs' works by electronically presenting copies of those works to Florida residents.

13. Personal jurisdiction over Defendants is also proper because Defendants are "operating, conducting, engaging in, or carrying on a business or business venture" in Florida under Florida Statute § 48.193(1)(a). Defendants operate their websites from their business address in Florida.

14. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendants transact business within this district and the acts complained of herein that have caused and are continuing to cause injury to Plaintiffs and are continuing to occur within this district.

<u>FACTUAL ALLEGATIONS</u>

15. Plaintiff FFH operates the famous Fontainebleau Miami Beach resort in Miami, Florida. The Fontainebleau Miami Beach, opened in 1954, is one of the most famous hotels in the United States, and was added to the National Register of Historic Places in 2008.

16. Fontainebleau Miami Beach includes 1,500 rooms, including 748 individually owned condominium units, many of which are rented out to the public through a rental program administered by Plaintiff FFH.

17. JS IP owns the trademarks regarding the Fontainebleau Miami Beach.

18. The towers are known as the "Tresor" and "Sorrento" towers. The structures and common areas of these towers are owned by Plaintiffs Fontainebleau Florida Tower 2, LLC and Fontainebleau Florida Tower 3, LLC, respectively.   There are 462 condominium units in the Tresor tower and 286 condominium units in the Sorrento tower.

19. Although some of the owners of the condominium units permanently reside in the units, approximately 85% of the unit owners rent their units out to the public through a rental management program which is

managed and administered exclusively by FFH.  FFH has been managing, administering, and renting the condominium units at the Fontainebleau Miami Beach since at least as early as February 2005.

20.     Individuals who purchase a condominium unit at the Fontainebleau Miami Beach are encouraged to join FFH's rental program, and the majority of unit owners choose to join the program.  These owners enter into a Unit Management Agreement ("UMA") with FFH and either FFT2 or FFT3, depending upon the location of their unit.  A sample UMA, redacted for personal and confidential business information, is attached as Exhibit A.

21.     Among other things, the UMA sets forth the terms and conditions under which the owner of the unit may rent the unit to third parties through FFH's unit rental management program.  The UMA typically has a fixed term of three years, which renews automatically unless the owner provides FFH and FFT or FFT3 with written notice of his or her intent not to renew at least 90 days prior to the expiration of the term.

22.     Paragraph 6 of the UMA specifies that FFH shall have the "sole and exclusive authority and right to rent, operate, manage, and administer the unit."  Ex. A, ¶ 6.  It goes on to state that if the owner rents his or her unit in violation of the Agreement, the owner will be in breach and FFH will have the right to terminate the Agreement.

23.    The UMA explains in more detail FFH's exclusive right to rent the unit in Paragraph 11:

> <u>Exclusive Right to Rent.</u>  Owner grants [FFH] the exclusive right to rent the Unit during the Term (including Long-Term Rentals) and Owner may not, on its own or in concert with any other person, rent, lease, or exchange the Unit for consideration of any kind to any person during the Term.  If Owner Rents his/her unit in violation of this agreement, [FFH] is entitled to its management fee and rental revenue on any income derived by owner.

Ex. A, ¶ 11.

24.    FFH's rental management program is a significant source of revenue for FFH and its affiliates.

## Plaintiffs' FONTAINEBLEAU Marks

25.    JS IP owns the trademark rights in the mark FONTAINEBLEAU ("JS IP's FONTAINEBLEAU Mark" or "the FONTAINEBLEAU Mark"), and licenses it to FFH and its affiliates in connection with the management and operation of the Fontainebleau Miami Beach.

26.    JS IP owns numerous trademark and service mark registrations consisting of or comprising the FONTAINEBLEAU Mark, including the following:

| Mark | Reg. No. | Reg. Date | Goods and Services |
|---|---|---|---|
| FONTANEBLEAU | 3,164,415 | 10/31/2006 | Real estate management, leasing and listing services in the field of residential home and condominium projects, country clubs, and recreational facilities<br><br>Real estate development and construction services, namely, planning, laying out, and construction of residential home and condominium projects, country clubs and recreational facilities.<br><br>Exh. B |
| FONTAINEBLEAU | 4,195,065 | 08/21/2012 | Pencils, paperweights, stationery<br><br>Coasters, not of paper and not being of table linen.<br><br>Exh C |
| FONTAINEBLEAU | 4,075,408 | 12/20/2011 | Beach towels<br><br>Exh. D |
| FONTAINEBLEAU | 4,119,072 | 03/27/2012 | Wearing apparel, namely, shirts, t-shirts, hats, caps, visors, sweatshirts, beach sandal<br><br>Exh. E |
| FONTAINEBLEAU | 4,321,353 | 04/16/2013 | Playing cards, gaming equipment, namely, poker; games and toys, namely toy banks, plush animals<br><br>Exh. F |
| FONTAINEBLEAU | 4,032,379 | 9/27/2011 | Wedding chapel services<br><br>Exh. G |

| | | | |
|---|---|---|---|
| FONTAINEBLEAU | 3,801,194 | 06/8/2010 | Postcards, posters, photographic prints, pens, letter openers, address books, calendars, photographic albums, paper napkins and coasters made of paper.<br><br>Exh. H |
| FONTAINEBLEAU | 3,801,195 | 06/8/2010 | Drinking glasses, mugs, steins, cups, shot glasses, plates, serving trays not of precious metal, cookie jars; water bottles sold empty, insulated sleeve holders for beverage cans, thermal insulated containers for beverages, vases, bottle openers, cork screws, decorative boxes of crystal, earthenware, glass, hair brushes, hair combs and non-metal coin banks.<br><br>Exh. I |
| FONTAINEBLEAU | 3,061,814 | 02/28/2006 | Hotel services.<br>Exh. J |
| FONTAINEBLEAU | 3,633,197 | 06/2/2009 | Beauty salon services; health spa services, namely cosmetic body care services.<br><br>Exh. K |
| FONTAINEBLEAU (Stylized) Fontainebleau | 4,392,681 | 08/27/2013 | Souvenir products, namely, coasters made of paper, paperweights, and greeting cards<br><br>Bags, namely, flights bags and tote bags.<br>Mugs; beverage glassware.<br><br>Exh. L |

| HOTEL FONTAINEBLEAU | 995,958 | 10/15/1974 | Hotel services.<br><br>Exh. M |
|---|---|---|---|

27.     These registrations are valid and subsisting and are evidence of JS IP and its licensees' exclusive right to use the FONTAINEBLEAU Mark in commerce in the United States.  Copies of the Certificates of Registration for these marks are attached as Exhibits B-M.

28.     JS IP and its affiliates and licensees have used the FONTAINEBLEAU Mark in commerce in the United States since at least as early as 1954.

29.     JS IP's FONTAINEBLEAU Mark is inherently distinctive.

30.     As a result of the extensive advertising and promotion of JS IP's FONTAINEBLEAU Mark, the volume of sales of the goods and services offered in connection with the FONTAINEBLEAU Mark, the unsolicited media coverage of the FONTAINEBLEAU Mark, and other factors, the FONTAINEBLEAU Mark has achieved a secondary meaning among consumers in the United States identifying JS IP and its licensees, including FFH, as the sole source of goods and services offered under the FONTAINEBLEAU Mark.

31.     JS IP has developed substantial goodwill in the FONTAINEBLEAU Mark and it is a business asset of immense value to JS IP.

32. JS IP has actively and consistently policed the FONTAINEBLEAU Mark, by demanding that third party users of similar marks cease and desist such use and by pursuing legal remedies where necessary.

33. JS IP's FONTAINEBLEAU Mark has become famous among the general consuming public of the United States.

<u>Defendant's Tortious and Infringing Activities</u>

34. For more than three years Defendants have intentionally, in bad faith, and without permission of Plaintiffs used Plaintiffs' copyright photographs and FONTAINEBLEAU Mark to create an association with Fontainebleau's famous Mark in order to dilute the distinctive quality of Fontainebleau's Mark and to divert customers from Fontainebleau's website to Defendants' own website for Defendants' profit.

35. Upon information and belief, Defendants list Fontainebleau hotel rooms on multiple websites using the FONTAINEBLEAU Mark, including on third party travel websites, Tripadvisor and HomeAway (see screen shots attached Exh. N). Defendant is using the copyright photographs and pictures to mislead unit owners into believing that FFH approves of the owners renting out their units through Defendant, when in fact the owners are breaching their agreements with FFH by doing so.

36. Defendants created a website titled "Fontainebleau Hotel Suites" with a domain of https://www.fontainebleauhotelsuites.com/ .

37.     The Fontainebleau Hotel Suites website domain is confusingly similar to Plaintiffs' domain and is likely to cause and does cause confusion among consumers as to whether Plaintiffs and Defendants are one and the same.  Moreover, on the website, Defendants use Fontainebleau's physical address as Defendant's business location, which creates additional confusion. (*See* Exh. O).

38.     Defendants also use Plaintiffs' Mark in order to solicit customers to reserve and book Fontainebleau Miami Beach hotel stays through Defendant's website and third party travel websites in order to prevent Fontainebleau from receiving the management and fixture fees that Plaintiff contractually agreed to with individual unit owners.

39.     Defendants are falsely stating and/or implying that Defendant Mimoun is a licensed realtor.  In violation of COMB code, Defendants are renting real property.  *See, e.g.* Fla. Stat. § 475.01, *et seq.*

40.     FFH does not allow and has never allowed unit owners in its rental program to transfer the management of their units to a third party.

41.     Defendants are also misleading the general public as to its association with the Fontainebleau Miami Beach, by using the Fontainebleau mark to suggest that consumers who book stays at Fontainebleau condominium units leased through Defendants are booking directly with the Fontainebleau Miami Beach.

42.     Defendants' tortious and infringing conduct has occurred since 2014.  As soon as Plaintiffs are aware of Defendants' tortious and infringing conduct, Plaintiffs send Defendants cease and desist correspondence. Defendants temporarily comply before shortly reposting the Mark and again purposefully confusing consumers and soliciting customers to book through Defendants rather than directly through Plaintiffs.   This pattern has occurred for the last three years.

43.     After several warnings to Defendants, FFH's General Counsel sent a final warning letter.  Defendants ignored the final warning, continued to infringe on FFH's Mark, and continued to intentionally and tortiously interfere with FFH's business relationships. (See correspondence attached as Exh. P).

44.     Upon learning of Defendants' continued interference, FFH referred the matter to its outside counsel.

## COUNT I
## TRADEMARK INFRINGEMENT
## UNDER THE LANHAM ACT, 15 U.S.C. § 1114

45.     Plaintiffs repeat and re-allege paragraphs 1 through 44 herein.

46.     Plaintiff JS IP is the owner of U.S. Reg. No. 3,164,415 for the FONTAINEBLEAU Mark in connection with "real estate management, leasing and listing services in the field of residential home and condominium projects."

47.     Plaintiff JS IP is the owner of U.S. Reg. No. 3,061,814 for the FONTAINEBLEAU Mark in connection with hotel services.

48.     Plaintiff JS IP is the owner of U.S. Reg. No. 3,633,197 for the FONTAINEBLEAU Mark in connection with beauty salon services; health spa services, namely cosmetic body care services.

49.     Defendants have used the FONTAINEBLEAU Marks in connection with real estate management, leasing, and listing services in the field of condominiums in interstate commerce, and is advertising and promoting to the general public its condominiums for overnight stays.

50.     Defendants have used the FONTAINEBLEAU Marks in connection with advertising for hotel stays and services, and the amenities including the spa and beauty salon available with related overnight stays.

51.     The consumers who book rentals of condominium units through Defendants are highly likely to believe that Defendants' services are offered by, licensed by, approved by, or otherwise associated with Plaintiffs.

52.     As a direct consequence of Defendants' actions, consumers and the public are likely to be, and have been, deceived or confused as to the source, origin, sponsorship and/or endorsement of Defendants' services and their relationship to Plaintiffs.

53.     Upon information and belief, and as demonstrated by Defendants' repeated violations after warnings, Defendants' purpose in using the FONTAINEBLEAU Mark was and is to deceive, mislead and confuse

customers and the public into believing that Plaintiffs are the source of Defendants' services, or that the services offered by Defendants are sponsored by, licensed by, or associated with Plaintiffs, so as to trade on the substantial fame, reputation and goodwill enjoyed by Plaintiffs.

54.     Defendants' unlawful acts constitute trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

55.     By reason of Defendants' unlawful acts and practices in violation of the Lanham Act, Plaintiffs have suffered, and will continue to suffer damage to their business, reputation and goodwill, for which Plaintiffs are entitled to injunctive relief and monetary damages.

56.     Because Defendants' actions have been committed with intent to cause harm to Plaintiffs and to confuse and deceive the public, Plaintiffs are entitled to Defendants' profits, treble Plaintiffs' actual damages, and an award of costs.  In addition, as Defendant's use of the FONTAINEBLEAU Mark constitutes intentional use of a "counterfeit mark" pursuant to 15 U.S.C. § 1116(d), Plaintiffs are entitled to statutory damages of not less than $1,000 or more than $200,000 per counterfeit mark as set forth in 15 U.S.C. §1117(a).   Finally, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of attorneys' fees.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN AND**
**UNFAIR COMPETITION UNDER THE LANHAM ACT, 15 U.S.C. § 1125**

57.     Plaintiffs repeat and re-allege paragraphs 1 through 44.

58. Plaintiff JS IP's FONTAINEBLEAU Mark is widely recognized by consumers throughout the United States.

59. Defendants are using the FONTAINEBLEAU Mark to advertise and sell overnight stays and booking services for hotel rooms in interstate commerce.

60. The hotel listing and booking services offered by Defendants under the FONTAINEBLEAU Mark are confusingly similar or identical to the services offered by Plaintiffs under Plaintiff JS IP's FONTAINEBLEAU Mark.

61. The hotel listing and booking services offered by Defendant under the FONTAINEBLEAU Mark are marketed and sold through the same channels of trade as the services offered by Plaintiffs under JS IP's FONTAINEBLEAU Mark.

62. Defendants' unauthorized use of the FONTAINEBLEAU Mark is likely to cause consumers and the public to erroneously believe that Defendants' real estate hotel listing and booking services are offered by, licensed by, approved by, or otherwise associated by Plaintiffs.

63. As a direct consequence of Defendants' actions, consumers and the public are likely to be, and have been, deceived or confused as to the source, origin, sponsorship and/or endorsement of Defendants' services and their relationship to Plaintiffs.

64.     Upon information and belief, Defendants' purpose in using the FONTAINEBLEAU Mark is to deceive, mislead and confuse customers and the public into believing that Plaintiffs are the source of Defendants' services, or that the services offered by Defendants are sponsored by, licensed by, or associated with Plaintiffs, so as to trade on the substantial fame, reputation and goodwill enjoyed by Plaintiffs.

65.     Defendants' unlawful acts constitute common law trademark infringement, unfair competition, and false representation as to source in violation of the Lanham Act, 15 U.S.C. § 1125(a).

66.     By reason of Defendants' unlawful acts and practices in violation of the Lanham Act, Plaintiffs have suffered, and will continue to suffer damage to their business, reputation and goodwill, for which Plaintiffs are entitled to injunctive relief and monetary damages.

67.     Because Defendants' actions have been committed with intent to cause harm to Plaintiffs and to confuse and deceive the public, Plaintiffs are entitled to Defendants' profits, treble Plaintiffs' actual damages, and an award of costs.  In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of attorneys' fees.

## COUNT III
## DILUTION UNDER THE LANHAM ACT, 15 U.S.C. § 1125(c)

68.     Plaintiffs repeat and re-allege paragraphs 1 through 44.

69.     As a result of the nationwide advertising and promotion of Plaintiff JS IP's FONTAINEBLEAU Mark, the extensive unsolicited media

coverage of Plaintiff JS IP's FONTAINEBLEAU Mark, and other factors, Plaintiff JS IP's FONTAINEBLEAU Mark has become famous among the general public of the United States.

70.    Plaintiff JS IP's FONTAINEBLEAU Mark became famous before Defendants' first use in commerce of the FONTAINEBLEAU Mark.

71.    Defendants use the FONTAINEBELAU Mark in connection with hotel booking and listing, and rental services which are offered and provided in the United States.

72.    Upon information and belief, and as evidenced by Defendants' repeated infringement after warnings and temporary compliance, Defendants' use of the FONTAINEBLEAU Mark has been intentional and in bad faith, namely, with the intent to trade on Plaintiffs' reputation and with the intent to cause dilution of Plaintiff JS IP's FONTAINEBLEAU Mark.

73.    Defendants' use of the FONTAINEBLEAU Mark has caused and is likely to continue to cause dilution of the distinctive quality of Plaintiff JS IP's FONTANIEBLEAU Mark in violation of the Lanham Act, 15 U.S.C. § 1125(c).

74.    By reason of Defendants' unlawful acts and practices, Plaintiffs have suffered and will continue to suffer damage to their business, reputation and goodwill, for which Plaintiffs are entitled to injunctive relief and monetary damages.

75.     Because Defendants' actions have been committed with intent to cause harm to Plaintiffs and to confuse and deceive the public, Plaintiffs are entitled to Defendant's profits, treble Plaintiffs' actual damages, and an award of costs.  In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of attorneys' fees.

## COUNT IV
## FEDERAL CYBERPIRACY UNDER THE LANHAM ACT,
### 15 U.S.C. § 1125(d)

76.     Plaintiffs repeat and re-allege paragraphs 1 through 44.

77.     Plaintiff JS IP's FONTAINEBLEAU Mark is widely recognized by consumers throughout the United States.

78.     Plaintiff JS IP's FONTAINEBLEAU Mark is entitled to protection.

79.     Defendants' domain names are confusingly similar to Plaintiffs' Mark.  Defendants' domain name uses and incorporates Plaintiffs' mark into its confusingly similar domain name.

80.     Upon information and belief, and as evidenced by Defendants' repeated infringement after warnings and temporary compliance, Defendants registered its domain name intentionally and in bad faith, namely, with the intent to trade on Plaintiffs' reputation and with the intent to cause dilution of Plaintiff JS IP's FONTAINEBLEAU Mark and to thereby profit from Plaintiffs' mark.

81.     Defendants' use of the FONTAINEBLEAU Mark has caused and is likely to continue to cause dilution of the distinctive quality of Plaintiff JS

IP's FONTANIEBLEAU Mark in violation of the Lanham Act, 15 U.S.C. § 1125(d).

82.     By reason of Defendants' unlawful acts and practices, Plaintiffs have suffered and will continue to suffer damage to their business, reputation and goodwill, for which Plaintiffs are entitled to injunctive relief and monetary damages.

83.     Because Defendants' actions have been committed with intent to cause harm to Plaintiffs and to confuse and deceive the public, Plaintiffs are entitled to Defendant's profits, treble Plaintiffs' actual damages, and an award of costs.  Plaintiffs are also entitled to injunctive relief prohibiting Defendants from using the confusingly similar domain name. In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of attorneys' fees.

## COUNT V
## TRADEMARK DILUTION UNDER FLA. STAT. § 495.151

84.     Plaintiffs repeat and re-allege paragraphs 1 through 44.

85.     Plaintiff JS IP's FONTAINEBLEAU Mark is highly distinctive and famous in the state of Florida.

86.     Plaintiff JS IP's FONTAINEBLEAU Mark became highly distinctive and famous in Florida prior to any use by Defendants of the FONTAINEBLEAU Mark or the FB Logo Mark.

87.     Defendants have used Plaintiff JS IP's FONTAINEBLEAU Mark in a manner that has lessened the capacity of the marks to distinguish Plaintiffs' goods and services, or is likely to lessen the capacity of the marks to distinguish Plaintiffs' goods and services.

88.     Defendants' use of the FONTAINEBLEAU Mark in its website domain constitutes trademark dilution in violation of Fla. Stat. §495.151.

89.     By reason of Defendants' unlawful acts and practices, Plaintiffs have suffered, and will continue to suffer damage to their business, reputation and goodwill, for which Plaintiff is entitled to injunctive relief.

### COUNT VI
### COMMON LAW TRADEMARK INFRINGEMENT UNDER FLORIDA LAW

90.     Plaintiffs repeat and re-allege paragraphs 1 through 44.

91.     Plaintiff JS IP's FONTAINEBLEAU Mark is highly distinctive in the state of Florida.

92.     Plaintiff JS IP's FONTAINEBLEAU Mark became highly distinctive in the state of Florida prior to any use by Defendants of the mark.

93.     Defendants have used the FONTAINEBLEAU Mark to market and sell hotel bookings, listings, and rental services in the State of Florida.

94.     The hotel bookings, listings, and rental services offered by Defendants under the FONTAINEBLEAU Mark is identical or closely related to the services offered by Plaintiffs under Plaintiff JS IP's FONTAINEBLEAU Mark.

95.     Defendants' use of the FONTAINEBLEAU Mark is likely to confuse consumers in the State of Florida into believing that Defendants' services are offered by, sponsored by, licensed by, or otherwise associated with Plaintiffs.

96.     Defendants' use of the FONTAINEBLEAU Mark constitutes trademark infringement in violation of Florida common law.

97.     Defendants' actions are willful, wanton, and in reckless disregard for the rights of Plaintiffs.

98.     By reason of Defendants' unlawful acts and practices, Plaintiffs have suffered, and will continue to suffer damage to their business, reputation and goodwill, for which Plaintiffs are entitled to injunctive relief and monetary damages.

## COUNT VII
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS UNDER FLORIDA LAW

99.     Plaintiffs repeat and re-allege paragraphs 1 through 44 herein.

100.    Plaintiffs FFT2, FFT3, and FFH have existing contractual relationships with hundreds of individual condominium unit owners.

101.    Plaintiffs' contracts with the condominium unit owners, the Unit Management Agreements, clearly state that FFH shall have the exclusive right and authority to rent, manage, operate, and administer the condominium units owned by these owners.

102. Defendants have full knowledge of the contracts between Plaintiffs and the condominium unit owners.

103. Defendants are knowingly, intentionally, and unjustifiably soliciting and inducing these unit owners to breach their contracts with Plaintiffs by renting their units through third party travel listings and their confusingly similar domain Fontainebleau Hotel Suites, and by giving themselves the authority to manage and administer the units, despite the provisions in the Unit Management Agreements stating that FFH shall have the sole authority to rent and administer the units and that any rental of the units through other parties shall be a breach of the Agreement.

104. In its contacts with the unit owners who have executed and are bound by Unit Management Agreements, Defendants have made and continue to make false or misleading representations suggesting that Defendants are associated with Plaintiffs, that Defendants have an agreement with Plaintiffs, that Defendants' services are offered by or authorized by Plaintiffs, or that Plaintiffs approve of the unit owners transferring the management of their units to an outside party.

105. Upon information and belief, several condominium unit owners under contract with Plaintiffs have breached these contracts as a direct result of Defendants' improper and unjustified solicitations and contacts, including false or misleading representations.

106.    Plaintiffs have suffered and will continue to suffer significant harm as a result of Defendants' interference with Plaintiffs' contractual relationships with the unit owners.

107.    By reason of Defendants' unlawful acts and practices, Plaintiffs have suffered, and will continue to suffer damage to their business, reputation and goodwill, for which Plaintiffs are entitled to injunctive relief and monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor and grant the following relief:

A.    An injunction enjoining Defendants, and anyone operating in concert with Defendants, from using the FONTAINEBLEAU Mark, or any mark, domain name, trade name or source identifier, which comprises or is confusingly similar to the FONTAINEBLEAU Mark;

B.    An injunction enjoining Defendants, and anyone operating in concert with Defendants, from selling, advertising or promoting any services that infringe upon the FONTAINEBLEAU Mark;

C.    An injunction enjoining Defendants from stating, suggesting, implying, or otherwise representing that Defendants' services are offered by, provided by, approved by, or authorized by Plaintiffs

D.    An injunction enjoining Defendants from interfering with Plaintiffs' contractual relationships with the owners of condominium units at

the Fontainebleau Miami Beach, including but not limited to directly contacting the condominium unit owners and soliciting them to transfer the management of their units to Defendants;

E.     That Plaintiffs be awarded their actual damages and lost profits in an amount to be proven at trial;

F.     That Defendants be required to account for any profits attributable to its infringing and tortious acts;

G.     That Defendants be required to transfer the registration of their website domain to Plaintiffs;

H.     That Plaintiffs be awarded the greater of three times Defendants' profits and three times any damages sustained by Plaintiffs, and prejudgment interest;

I.     That all products, labels, signs, prints, packages, brochures, and advertising and promotional materials in the possession of Defendants bearing Plaintiffs' trademark material, shall be delivered up by Defendants and destroyed;

J.     That Plaintiffs be awarded their reasonable attorney fees and costs in prosecuting this action; and

K.     That Plaintiffs be granted such other and further relief which the Court deems just and proper.

Dated: October 3, 2017

Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel: (305) 476-7400
Fax: (305 476-7444

By___/s Roberto Martínez_____
Roberto Martínez
Fla. Bar No. 305596
bob@colson.com
Stephanie A. Casey
Fla. Bar. No. 97483
scasey@colson.com
Lindsey Lazopoulos Friedman
Fla. Bar No. 91792
lindsey@colson.com

*Attorneys for Plaintiffs*